JUDGE TORRES

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

14 CV 5445

| | |
|---|---|
| MAX FREIDZON, | ) |
| Plaintiff, | ) ) ) |
| | ) Case No. _____ |
| -against- | ) ) |
| OAO LUKOIL, LUKOIL NORTH AMERICA, LLC, OAO GAZPROM, JSC GAZPROM NEFT, and GASPROMNEFT-AERO | ) **COMPLAINT** ) ) ) |
| Defendants. | ) **JURY TRIAL DEMANDED** ) ) ) |

Plaintiff, Max Freidzon ("Plaintiff") brings this Complaint against OAO Lukoil, Lukoil North America, LLC, OAO Gazprom, JSC Gazprom Neft, and Gaspromneft-Aero (collectively, the "Defendants"). In support thereof, Plaintiff alleges the following:

## NATURE OF THE ACTION

1. Mr. Freidzon is a co-founder and owner of twenty nine percent (29%) of shares in SIGMA, a holding company created to pursue a number of common business interests. One of SIGMA's business activities was the creation of SOVEX, an oil distribution company.

2. SIGMA was the holding company which owned sixty six percent (66%) of shares in SOVEX.

3. Defendants OAO Lukoil, Lukoil North America, LLC, OAO Gazprom, Gazprom Neft, and Gaspromneft-Aero are now unlawful owners of SOVEX and SIGMA. As alleged more fully below, Defendants have engaged in an organized international criminal activity which resulted, *inter alia*, in the forced loss of Mr. Freidzon's shareholding interest in SIGMA and SOVEX, grave physical attacks, attempts on Mr. Freidzon's life, and subsequent repeated threats (the "Illegal Scheme").

## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MAX FREIDZON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. _____ |
| -against- ) | |
| ) | |
| OAO LUKOIL, LUKOIL NORTH ) | **COMPLAINT** |
| AMERICA, LLC, OAO GAZPROM, ) | |
| JSC GAZPROM NEFT, and ) | |
| GASPROMNEFT-AERO ) | **JURY TRIAL DEMANDED** |
| ) | |
| Defendants. ) | |
| _____) | |

Plaintiff, Max Freidzon ("Plaintiff") brings this Complaint against OAO Lukoil, Lukoil North America, LLC, OAO Gazprom, JSC Gazprom Neft, and Gaspromneft-Aero (collectively, the "Defendants"). In support thereof, Plaintiff alleges the following:

### NATURE OF THE ACTION

1. Mr. Freidzon is a co-founder and owner of twenty nine percent (29%) of shares in SIGMA, a holding company created to pursue a number of common business interests. One of SIGMA's business activities was the creation of SOVEX, an oil distribution company.

2. SIGMA was the holding company which owned sixty six percent (66%) of shares in SOVEX.

3. Defendants OAO Lukoil, Lukoil North America, LLC, OAO Gazprom, Gazprom Neft, and Gaspromneft-Aero are now unlawful owners of SOVEX and SIGMA. As alleged more fully below, Defendants have engaged in an organized international criminal activity which resulted, *inter alia*, in the forced loss of Mr. Freidzon's shareholding interest in SIGMA and SOVEX, grave physical attacks, attempts on Mr. Freidzon's life, and subsequent repeated threats (the "Illegal Scheme").

4. Pursuant to Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1961 *et seq.* and other laws, Mr. Freidzon seeks to recover over $180.3 million in compensatory damages as well as at least $360.6 million based upon the trebling of its compensatory damages, punitive damages, costs, and attorneys' fees, for losses from the Illegal Scheme.

## JURISDICTION

5. This action arises under the laws of the United States, specifically the RICO Act, 18 U.S.C § 1961 et. seq.

6. This Court has subject matter jurisdiction to hear this action under at least 28 U.S.C. §§ 1331, 1337, and 1367.

7. Jurisdiction also lies pursuant to 28 U.S.C. §1332(a) because there is diversity of citizenship between Mr. Freidzon and Defendants and amount in controversy exceeds $75,000.

8. Venue is proper in this District under 18 U.S.C. § 1965 and 28 U.S.C. § 1391 because events and transactions have taken place in this District and because one of the Defendants resides here.

## PARTIES

9. Plaintiff Max Freidzon is an individual citizen of the State of Israel and of the Russian Federation.

10. OAO Lukoil ("OAO") is an open joint stock company (public corporation) organized under the laws of and maintains its principal place of business in the Russian Federation. Lukoil is Russia's largest oil company and one of Russia's most powerful economic entities. Lukoil and/or its wholly-owned and controlled subsidiaries export petroleum to the United States.

11. Lukoil North America, LLC ("LNA") is an indirect wholly-owned subsidiary of OAO, headquartered in New York with its main office and mailing address at 505 Fifth Ave, 9th Floor, New York, New York, 10017, as listed on LNA's website, http://www.lukoilamericas.com/, and has a Registered Agent, CT Corporation System, located at 111 Eighth Avenue, New York, New York, 10011.

2

LNA markets Lukoil-branded motor fuels and lubricants through a network of over 500 Lukoil-branded service stations across Northeastern and Mid-Atlantic United States. In addition, LNA offers various associate services, including fleet fueling.

12. OAO Gazprom ("OAO") is an open joint stock company that supplies energy to domestic and foreign customers. OAO and/or its wholly-owned and controlled subsidiaries export petroleum products to the United States, specifically to Los Angeles, Denver, San Diego, Atlanta, Boston, Philadelphia Houston, and Chicago.

13. JSC Gazprom Neft ("Neft") is a vertically integrated oil company primarily owned by OAO. Neft engages in the sale and distribution of crude oil, and the production and sale of petroleum products. Neft supplies fuel to foreign airlines including those of the United States.

14. Gaspromneft-Aero ("Aero") is the aviation-fuel business operator of Gazprom Neft. Aero supplies jet fuel to the domestic and foreign airlines. Specifically Aero supplies fuel to many American airlines, including but not limited to AirTran Airways, American Airlines, Delta Airlines, etc.

15. OAO, Neft, and Aero engaged in export business with the United States. According to the Russian authorities, providing fuel to foreign airlines is considered an export business.

## FACTUAL BACKGROUND

### A. Mr. Freidzon is a Rightful Owner of SIGMA and SOVEX Shares

16. In 1994 Mr. Freidzon and his partner Mr. Skigin co-founded SIGMA, a holding company created to pursue a number of common business interests. Mr. Freidzon owned twenty nine percent (29%) of shares in SIGMA, while Mr. Skigin owned the remaining seventy one percent (71%). (Exhibit A (a copy of Mr. Freidzon's Stock Certificate in SIGMA showing a 29% interest with translation)); (Exhibit B (an extract from the registry of shareholders of the privately held corporation "Sigma" No. 02-B, referring to Mr. Freidzon's ownership of 29% of Sigma with translation.)).

3

17. In 1995 Mr. Freidzon and Mr. Skigin co-founded SOVEX, an oil distribution company based in St. Petersburg, Russia.

18. SIGMA owned sixty six percent (66%) of SOVEX's stock. The remaining thirty four percent (34%) was owned by Horizon International Trading Ltd. ("Horizon Trading") represented by Mr. Graham Smith. (Exhibit C (an extract from the registry of shareholders of privately held corporation "Sovex," referring to SIGMA's ownership interest in SOVEX with translation.)).

19. Horizon Trading came under the control of SOTRAMA, a Monaco-based company, owned by Mr. Skigin, and later investigated by the Monegasque authorities for allegations of money laundering activities.

20. At the time of SOVEX's creation, Mr. Alexander Dyukov was a financial officer working under Mr. Skigin. Mr. Dyukov was responsible for overseeing the accounting work, producing SOVEX's financial records, and had reporting responsibilities to the Russian tax authorities. Mr. Dyukov also managed the cash accounts across all of Mr. Skigin's various operations, including money transfers between these operations, Horizon Trading and SOTRAMA.

21. Also at the time of SOVEX's creation, Mr. Alexey Miller served with the Committee for External Relations of the St. Petersburg Mayor's Office. In this official government capacity, Mr. Miller assisted Messrs. Skigin and Freidzon in registering SIGMA and SOVEX.

22. Messrs. Miller and Dyukov both had direct knowledge of SIGMA and SOVEX's shareholding structures, as well as Mr. Freidzon's rightful ownership interests in the companies.

23. Mr. Miller later became Director for Development and Investments for OBIP (the "Association of Banks Supporting Investments in St. Petersburg Port"), which was managed by Messrs. Traber and Skigin. The largest shareholder of OBIP was NASDOR, a Lichtenstein company registered at Graham Smith's business address, and controlled by Ilya Traber and other investors. Mr. Miller was in frequent contacts with Graham Smith and represented the interest of OBIP in those transactions. Following the

4

assassination of OBIP's competitor and a City official, a bloody struggle for control of the Saint Petersburg Port, ended with OBIP being awarded a city contract to manage the Port in 1997.

24. Messrs. Miller and Dyukov worked for OBIP under the supervision of Mr. Traber, who in turn was following orders from Messrs. Sergei Vasiliev and Vladimir Kumarin.

25. SOVEX's business activity involved the sale of jet fuel to domestic and foreign airlines landing at Pulkovo Airport in Saint Petersburg, Russia. SOVEX gained an exclusive relationship with Pulkovo Airport from 1995 to 2013, and the volume of aero fuel it sold in 2012 reached 400,000 tons. From 2007 to 2011, SOVEX's revenues reached USD $1.26 Billion, and net income after taxes reached USD $131 Million.

26. In or around 1995, Mr. Skigin formed another company, Petersburg Oil Terminal 5 ("POT") with another partner, Mr. Ilya Traber. Mr. Dyukov served as Director General of POT from 1996-1998. POT became a supplier of oil products to SOVEX. Today, POT is owned by a number of Cyprus-based offshore companies principally controlled by Mr. Sergei Vasiliev, a well-known St. Petersburg-based criminal.

**B.     Criminal Activity that Ousted Mr. Freidzon from SOVEX**

27. Starting in 1997, SOVEX's cash flow was captured and controlled by well-known Russian criminals, Messrs. Sergei Vasiliev and Vladimir Kumarin (aka Barsukov).

28. Mr. Kumarin is widely known as the co-founder of the Tambov Gang, a violent St. Petersburg-based criminal group. (The other alleged Tambov Gang co-founder, Mr. Valery Ledovskih, is currently a CEO of Gazprom Neft, St. Petersburg.).

29. In 1997, Messrs. Vasiliev and Kumarin who were associated with Mr. Traber, used SOVEX and some other oil trading firms to illegally launder money out of the Russian Federation.

30. Messrs. Vasiliev and Kumarin used SOVEX to not only avoid tax ramifications which resulted in enormous revenue loss for the Russian Federation, but also laundered profits from criminal activities.

5

The money was illegally funneled from SOVEX to Lichtenstein and to the Bank of New York. After the money was "cleaned," it made its way back from the Bank of New York to Europe and to the Russian Federation to further sponsor criminal activities.

31. Some of the "cleaned" money was used to create new businesses and entities, such as POT and OBIP and helped bring cash flow to Horizon Trading in Lichtenstein. The above mentioned scheme was conducted with the assistance of Mr. Graham Smith and Mr. Skigin.

32. Mr. Skigin later moved to Monaco, but was deported by the Monegasque authorities for his suspected involvement in fraud and money laundering activities.

33. In 2005, the Bank of New York settled a related money laundering suit with the federal government for $38 million.

34. In or around 1997, Mr. Vasiliev ordered Mr. Traber to take SOVEX's incorporation documents, as well as the corporate seals, from the SOVEX manager's office, and alter the ownership records.

35. Thereafter, SIGMA and Horizon Trading disappeared from the list of founders-shareholders, and in 2002 two outside individuals with no prior ties to SOVEX, Messrs. Alexander Ulanov and Viktor Korytov (currently Deputy Chairman of the Board at Gazprombank) took a 3.2% and 0.8% interest, respectively, in SOVEX. The rest of the shares remained undistributed.

36. Mr. Freidzon was unaware of this criminal activity because despite numerous attempts to review records of SOVEX and SIGMA, a slew of excuses were always provided that prevented Mr. Freidzon from doing so.

37. For the next few years, Mr. Freidzon attempted to gain access to financial records of the company, however his attempts were futile.

38. Finally, in 2012 Mr. Freidzon was able to obtain access to documents pertaining to SOVEX. At that time, Mr. Freidzon realized that the documents have been falsified and his name had mysteriously disappeared as of 2002 from the list of shareholders.

39. Mr. Freidzon immediately attempted to resolve this misunderstanding. His attempts resulted in numerous life threatening phone calls and physical attacks.

### C. Lukoil and Gazprom Neft's Purchase of SOVEX and their Failed Due Diligence

40. From 2006 through 2007 Lukoil conducted a takeover of SOVEX.

41. On March 23, 2007, Lukoil and Gazprom Neft signed an agreement to cooperate in the distribution of jet fuel in the northwest of Russia, and in particular Saint Petersburg. Under this agreement, Lukoil and Gazprom Neft agreed to form a new corporation, "Refueling North-West", with 50% ownership interest each. In paragraph 2 of this Agreement the parties decided that "Refueling North-West" shall acquire ownership of 99.2% of the voting shares of JSC "SOVEX". In October 2007 "Refueling North-West" was established by Lukoil-Aero in accordance to this Agreement, and on December 10, 2007 "Lukoil" and "Lukoil -Aero" decided that "Refueling North-West" will acquire 99.2% of JSC "SOVEX"

42. On December 21, 2007, Aero petitioned the Russia's Federal Anti-Monopoly Service ("FAS") to acquire 50 percent of the share capital of "Refueling North-West." Per Refueling North-West agreement, Gazprom Neft acquired 50% of "Refueling North-West's shares in February 2008.

43. On November 23, 2006 Mr. Dyukov was appointed Acting President of JSC Gazprom Neft, and on December 30, 2006 he was elected President. Alexei Miller has been Chairman of Gazprom's Management Committee since 2001, and Chairman of Gazprom Neft since its inception. Both were in position of authority and key decision makers at Gazprom-Neft during the time when Lukoil created Refueling North-West and decided to acquire JSC SOVEX.

44. As previously stated both Mr. Dyukov and Mr. Miller had personal knowledge of Mr. Freidzon's interest and ownership structure of SOVEX. As of 2007, the purported ownership structure was inconsistent with facts personally known to Messrs. Dyukov and Miller. Defendants, nevertheless, acquired SOVEX without performing their due diligence.

7

45. As a result Defendants fraudulently ousted Mr. Freidzon from his rightful ownership of SOVEX's shares.

46. Mr. Ali Beglov, currently the General Director of Lukoil Bunkering, also collaborated with Messrs. Traber, Vasiliev and Dyukov. During the relevant timeframe, Mr. Beglov worked as a manager for Lukoil Neva (which later became Lukoil Bunkering) and in that capacity came to know Mr. Skigin (in or around 1995), in addition to associating with Messrs. Traber, Vasiliev, and Dyukov.

### D. Mr. Freidzon's Attempts to Regain his Ownership Interests both Failed and Resulted in Threats and Physical Attacks

47. Throughout the period of 2001-2002, Mr. Freidzon attempted to regain access to SOVEX's records to verify his stock ownership. However, his attempts were met by Mr. Graham Smith's threats by saying that should Mr. Freidzon pursue his attempts, Mr. Freidzon "will be found dead."

48. In 2003, Mr. Skigin, Mr. Freidzon's partner, passed away. Mr. Freidzon again attempted to access the records of SIGMA and SOVEX, through the legal process in the Russian courts. At that time, Mr. Freidzon received several threatening anonymous telephone calls.

49. On December 21, 2003, Mr. Freidzon was physically attacked. His assailants told him to forget about getting any information on SIGMA and SOVEX. Mr. Freidzon woke up in a hospital with broken legs, a concussion, pierced pancreas, and a bleeding intestine.

50. Mr. Freidzon remained hospital-bound for two months and thereafter, fled to Israel. While at the Saint Petersburg Airport, Mr. Freidzon received another threatening telephone call to tell him that his assailants knew where Mr. Freidzon was staying in Israel and that he would be attacked in the event he chooses to pursue this fight.

51. In 2006, while Lukoil was negotiating a purchase of SOVEX with unknown parties, Mr. Freidzon filed another complaint with the Russian Prosecutor's office citing threats, physical attacks and his inability to obtain any information as to his status with SIGMA and SOVEX.

8

52. The Prosecutor of the Frunze district of Saint Petersburg accepted the complaint, initiated an investigation, and contacted SIGMA and SOVEX to discuss the allegations. However, the prosecutor then abruptly stopped the investigations and told Mr. Freidzon he could not help him.

53. Following the filing of the complaint, while in St Petersburg, and later in Israel, Mr. Freidzon received several more anonymous telephone calls threatening his life.

54. Finally, in 2012 Mr. Freidzon was able to obtain documents pertaining to SOVEX's financial records and ownership papers.  At that moment Mr. Freidzon, realized that the documents have been falsified and altered and that his name was unlawfully redacted thereby depriving him of his rightful ownership of SIGMA shares.

55. In 2012, Mr. Freidzon immediately initiated a legal proceeding with the Prosecutor's office, the police office, and the local court in St. Petersburg, Russia.

56. Mr. Freidzon eventually obtained a meeting with the police investigator where the police investigator told Mr. Freidzon that the names of Messrs. Skigin and Smith could not be included in his complaint.

57. Once again, Mr. Freidzon received anonymous telephone calls threatening his life, both while he was at the airport returning to Israel and in Israel.

58. While in the United States in 2014, Mr. Freidzon again received an anonymous threatening telephone call.

## CAUSES OF ACTION

***First Cause of Action:***
***(Federal Civil RICO, 18 U.S.C. § 1962(c))***
***Against All Defendants***

59. Paragraphs 1 to 58 are incorporated as if fully set forth herein.  The conduct of Defendants alleged violates 18 U.S.C. § 1962(c).

9

60. 18 U.S.C. § 1962(c) makes it unlawful to conduct or participate in the affairs of an enterprise through a pattern of racketeering activity. Defendants violated this statute, and as a result, Plaintiff was injured.

61. Each Defendant is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. § 1961(3).

62. Each Defendant violated 18 U.S.C. § 1962(c) by the acts described in the prior paragraphs, and as further described below.

63. The Enterprise. SOVEX is a legal entity within the meaning of 18 U.S.C. § 1961(4), and constitutes an enterprise within the meaning of the RICO statute.

64. Beginning at a time currently unknown to Plaintiff, Defendants became associated with SOVEX.

65. Beginning at a time currently unknown to Plaintiff Defendants participated in the conduct of the affairs of SOVEX through a pattern of racketeering activity in the United States or foreign commerce as described in this complaint.

66. In addition or in the alternative, Defendants together formed an association-in-fact enterprise with a common and continuing purpose, constituting an enterprise within the meaning of 18 U.S.C. § 1961(4). The members of the enterprise functioned as a continuing unit that shared and continues to share a common purpose and relationship.

67. Pattern of Racketeering Activity. Defendants, each of whom are persons associated with the enterprise, did knowingly, willfully, and unlawfully conduct or participate, directly or indirectly, in the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5), and 1961(c). The racketeering activity was made possible by Defendants' regular and repeated use of the facilities and services of the enterprise.

68. Predicate acts of racketeering were not isolated, but rather the acts of Defendants were related in that they had similar purpose and result, participants, and method of commission.

69. <u>Predicate Act: Money Laundering in Violation of 18 U.S.C. § 1956:</u> Defendants committed an indictable offense of money laundering under 18 U.S.C. § 1956. The above named defendants transferred and transmitted money received from Mr. Freidzon's stocks to New York from places outside the United States with the intent to promote the carrying on of specified unlawful activity within the meaning of Section 1956(c)(7), including among other things, fraud.

70. <u>Predicate Act: Theft 18 U.S.C. § 1961(1)(b)</u>: Defendants committed an indictable offense of theft under 18 U.S.C. § 1961. The above named defendants illegally obtained SOVEX's documents and altered the records thus deleting the original owners from the stock certificates and unlawfully reassigned the stock certificates to them.

71. <u>Predicate Act: Extortion of 18 U.S.C. § 1961(1)(a)</u>: Defendants committed an indictable offense of extortion 18 U.S.C. § 1961. The above named defendants though unlawful life threatening threats and physical attacks continue to prevent Mr. Freidzon from ascertaining his rightful ownership of his stocks in SOVEX.

72. <u>Continuity of Conduct</u>: Defendants' violation of state and federal laws as set forth herein, each of which directly and proximately injured Plaintiff demonstrates a course of conduct spanning a period of time unknown to Plaintiff through the present and that continues into the indefinite future with no stopping point.

73. The Defendants are reaping profits from the enterprise created by the Plaintiff without any compensation to the Plaintiff.

***Second Cause of Action:***
***(Federal Civil RICO, 18 U.S.C. § 1962(b))***
***Against All Defendants***

74. Paragraphs 1 to 73 are incorporated as if fully set forth herein. The conduct of Defendants alleged violates 18 U.S.C. § 1962(b).

11

75. 18 U.S.C. § 1962(b) makes it unlawful to acquire or maintain, via a pattern of racketeering activity, any interest in or control of any enterprise engaged in or affecting interstate or foreign commerce.

76. Defendants are each legal entities within the meaning of 18 U.S.C. § 1961(4) are either engaged in interstate or foreign commerce or undertake or caused activities to be undertaken that affect interstate or foreign commerce.

77. Defendants acquired control and maintained control over SOVEX through a pattern of racketeering activity as described in greater detail above. Among other predicate acts, the Defendants were able to obtain control of SOVEX by the commission of crimes such as fraud, extortion, falsifying records, money laundering and use of interstate or foreign facilities to further their actions.

78. The elements of Section of 1962(c) that are common with Section 1962(b) are satisfied, as described above in the First Cause of Action.

79. Plaintiff has sustained an "acquisition injury" that is separate and distinct from the harm caused by the RICO predicate acts. As a result of the acquisition of an interest in SOVEX by Defendants, Plaintiff is deprived of his right to control the value of his stocks.

*Third Cause of Action:*
*(Violation of Minority Shareholder Rights)*
*Against All Defendants*

80. Paragraphs 1 to 79 are incorporated as if fully set forth herein. The conduct of Defendants constitutes violation of minority shareholder's rights under Russian Federal Law No. 208-FZ on Joint Stock Companies, Art. 79(3).

81. According to Russian law, "[t]he decision to approve a major deal of which the subject matter is assets worth over fifty percent (50%) of the balance sheet value of the company's assets shall be adopted by a general meeting of shareholders by a majority of three quarters of the votes of shareholders owning

voting shares and attending the general meeting of shareholders." Russian Federal Law No. 208-FZ on Joint Stock Companies, Art. 79(3).

82. The remedy for a breach of this provision is that "[a] major deal accomplished in breach of the provisions of the present article may be recognized as null and void on the company's or a shareholder's complaint." Id. at Art. 79(6) (emphasis added).

83. Here, SIGMA's only asset was SOVEX, of which Mr. Freidzon owned 29% and Horizon owned 71%.

84. As a result, SIGMA could not sell SOVEX without a shareholder's meeting and subsequently Mr. Freidzon's approval; however, SIGMA did not hold a shareholder's meeting, violating Article 79(3).

85. Mr. Freidzon has been damaged as a result. Accordingly, Defendants must return Mr. Freidzon's shares or compensate him for the value of those shares.

### *Forth Cause of Action:*
### *(Unjust Enrichment)*
### *Against All Defendants*

86. Paragraphs 1 to 85 are incorporated as if fully set forth herein. The conduct of Defendants constitutes violation of Russia Civ. Code Art. 1102(1).

87. Under Russian law, a "person who has acquired . . . property (purchaser) without the grounds, established by the law, other legal acts or the transaction, at the expense of another person (victim) shall be obliged to return to the latter the property acquired or saved unjustly (unjust enrichment), except for the cases, provided for by Article 1109." Russia Civ. Code Art. 1102(1).

88. Furthermore, the purchaser must return the property regardless of whether the purchaser was at fault. Russia Civ. Code Art. 1102(2). And if the purchaser cannot return the property in kind, "the purchaser shall compensate to the victim for the actual value of this property at the time of its acquisition, and also for the losses, caused by the subsequent change in the value of property, if the purchaser has not

reimbursed its value at once after he has known about unjust enrichment." Russia Civ. Code Art. 1105(1).

89. Here, Defendants unjustly acquired Mr. Freidzon's shares of SOVEX, and Mr. Freidzon has been damage as a result. Accordingly, Defendants must return Mr. Freidzon's shares or compensate him for the value of those shares.

*Fifth Cause of Action:*
*(Fraud)*
*Against All Defendants*

90. Paragraphs 1 to 89 are incorporated as if fully set forth herein. The conduct of Defendants violates the fraud claim under Chapter 59 and Chapter 60 of the Civil Code of Russia.

91. Russia's Civil Code creates a general obligation to provide compensation for harm caused by the violation of a legal duty, to return unjustly obtained property, and to compensate for injuries caused by an unlawful taking, potentially in excess of the actual loss.

92. Under the Civil Code, a party may seek compensation for damages caused by the fraudulent actions of another without any prior proof of criminal misconduct.

93. Defendants fraudulently obtained Mr. Freidzon's shares of SOVEX and Mr. Freidzon has been damaged as a result. Accordingly, Defendants must return Mr. Freidzon's shares or compensate him for the value of those shares.

*Sixth Cause of Action:*
*(Conversion)*
*Against All Defendants*

94. Paragraphs 1 to 93 are incorporated as if fully set forth herein. The conduct of Defendants constitutes violation of Russia Civ. Code Art. 1064.

95. If a sale is completed and another party absconded with a buyer's share of the money, it constitutes the tort of conversion. Likewise, the "injury inflicted on the . . . property of an individual . . .

shall be subject to full compensation by the person who inflicted the damage." Russia Civ. Code Art. 1064.

96. Here, Defendants converted Mr. Freidzon's shares of SOVEX, and Mr. Freidzon has been damaged as a result. Accordingly, Defendants must return Mr. Freidzon's shares or compensate him for the value of those shares.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request that the Court:

A. Award Plaintiff compensatory damages as provided by law;

B. Award Plaintiff punitive damages as proved by law;

C. Award Plaintiff treble damages as provided by law;

D. Award injunctive relief against further violations;

E. Declare, adjudge, and decree that Max Freidzon is the lawful owner of SIGMA's 29% of shares which is a lawful owner of 66% of shares of SOVEX;

F. Impose a constructive trust in favor of Plaintiff on any assets Mr. Freidzon may have;

G. Order an accounting with respect to any assets of SOVEX and Defendants;

H. Award Plaintiff his reasonable attorneys' fees and costs; and

I. Award Plaintiff such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demand trial by jury on issues so triable.

Dated: New York, New York
July 18, 2014

By: _____
Max Freidzon
1315 Arbor Park Drive
San Jose, CA 95126-4220
Tel: 408-771-4450